# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRANSFORMATIONAL STRATEGIES   *
CONSULTING, INC.   *
101 South Ft. Lauderdale Beach Boulevard   *
Suite 1505   *
Ft. Lauderdale, Florida 33316   *
  *
       Plaintiff   *
  *
    vs.   *   Case No. _____
  *
ACS STATE HEALTHCARE, LLC   *
1800 M Street, N.W.,   *
Washington, D.C. 20005   *
  *
SERVE:   *
  CSC-LAWYERS INCORPORATING   *
  SERVICE COMPANY, Registered Agent  *
    7 St. Paul Street, Suite 1660   *
    Baltimore, Maryland 21202   *
  *
       Defendant   *

---

## COMPLAINT
### (Breach of Contract)

Transformational Strategies Consulting, Inc. (hereinafter "TSCI"), Plaintiff, by its

attorneys, J. Stephen McAuliffe, III, James A. Sullivan, Jr. and Miles & Stockbridge P.C., sues

ACS State Healthcare, LLC (hereinafter "ACS"), Defendant, and states as follows:

## JURISDICTION

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1332(a) in that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

## PARTIES

2.      Plaintiff TSCI is a corporation organized and existing pursuant to the laws of the State of Florida, having its principal place of business in the State of Florida.

3.      Defendant ACS is a limited liability company organized and existing pursuant to the laws of the State of Delaware having its principal office in the District of Columbia.

## FACTS

4.      On or about October 13, 2005, TSCI entered into an agreement with ACS whereby TSCI agreed to provide to ACS "executive consulting and advice services regarding the architecture and development of ACS Enterprise solution for MMIS claims processing." A copy of the eleven (11) page agreement by and between TSCI and ACS dated October 13, 2005 (hereinafter "the Original Agreement") is attached hereto as **Exhibit 1** and incorporated herein.

5.      On or about September 19, 2006, TSCI and ACS amended the Original Agreement by executing the "Amendment to Agreement By and Between ACS State HealthCare LLC and Transformational Strategies Consulting, Inc. For Additional Statement of Work To Provide Executive Management Resources and Consulting and Advice Regarding Planning, Start up and Formational Executive Management of ACS Solution Center" (the "Amendment"). A copy of the four (4) page September 19, 2006 Amendment is attached hereto marked **Exhibit 2** and incorporated herein by reference.

6.     The Amendment to the Original Agreement contains a provision specifying the payments due from ACS to TSCI if the contract, as amended, is terminated by ACS for the convenience of ACS.  Section 8 of the Amendment entitled "Termination" provides as follows:

> ACS can terminate this Agreement in case of TSCI default due to grave cause or negligence imputable to TSCI, if TSCI fails to remedy to the satisfaction of ACS said default within 30 days of ACS written notification to this effect.  Should this be the case, TSCI shall be paid the Invoices issued up to and including the current month, pro-rated if for a partial month, of final determination to Terminate.
>
> If, at the ACS's sole discretion, the Agreement for this Amended Scope is terminated for the convenience of ACS; then ACS can, at its sole discretion, select one of the following two options:
>
> (a)     ACS would be able to modify the scope of assignment of the TSCI resources, for the remainder of the original period of two years, to other projects that require similar skills and experience under the same Terms and Conditions, other than the new amended scope or
>
> (b)     TSCI shall be paid for the Invoices issue up to and including the month when the Notice of Termination for Convenience was received by TSCI.  In addition, ACS will pay Early Termination Charges in an amount equal to fifty percent (50%) of the remaining balance of the total Amended Scope Cost minus the actual payments received by TSCI, if Termination within the first 18 months period.  ACS will pay Early Termination Charges in an amount equal to twenty five percent (25%) of the remaining balance of the total Contract amount of Amended Scope Cost minus the actual payments received by  TSCI, if Termination within the last six month period of the Contract.

7.     As stated in the September 19, 2006 Amendment to the Original Contract, TSCI was engaged by ACS in September of 2006 to provide executive management and consulting advice regarding the formation and management of the ACS Solution Center.

8.    ACS began to use the Solutions Center shortly after its creation to manage a health care product development project being created by ACS for the State of New Hampshire and other state governments in general.

9.    On April 25, 2007 Tasos Tsolakis was hired by ACS to run the ACS Solution Center.  Tom Burlin, ACS EVP and COO stated in an announcement memo dated May 4, 2007 distributed by e-mail to all ACS Employees and TSCI consultants that **"I am very pleased to announce the appointment of Tasos Tsolakis as Senior Vice President in charge of the Solutions Center, reporting to me."**  (Emphasis supplied).

10.    At that time TSCI had a team of five (5) senior executive consultants fully engaged in work for the ACS Solutions Center at the direction of Tasos Tsolakis for which TSCI was paid by ACS according to the Original Agreement as amended on September 16, 2006.

11.    On July 6, 2007, Fernando Salgado, the President of TSCI, sent an e-mail to Tom Burlin, the Chief Operating Officer of ACS's parent company, Affiliated Computer Systems, Inc. regarding serious concerns about the State of New Hampshire project performance, schedule and TSCI recommended approach to perform the necessary customization as promised to the State of New Hampshire Government.  A copy of Mr. Salgado's July 6, 2007 e-mail is attached hereto marked **Exhibit 3** and incorporated herein by reference.

12.    Tom Burlin replied to Mr. Salgado's July 6, 2007 e-mail and copied Tasos Tsolakis, the ACS executive in charge of the ACS Solution Center on his reply, as follows:

> Fernando, thank you for the update.  I have recently reviewed the status of the project with Tasos and Chris.  While much of the information in your memo reflects the status I received there are some significant points of departure.  I would ask that Dan meet with Chris and Tasos to discuss these differences and the status as reported to me.  I will ask Tasos and Chris to advise me after they meet as to any further actions.   Again thank you for candid

assessment.  This is an extremely important program to ACS and myself personally.

A copy of Mr. Burlin's July 9, 2007 reply thanking Mr. Salgado "for his candid assessment" is part of Exhibit 3 which is attached hereto and incorporated herein.

13.    Mr. Salgado replied to Mr. Burlin's e-mail referenced above, as follows:

Tom: You are certainly most welcome – I am in daily contact with all 5 TSCI people.

I hope there are no negative backlash from my frank language intended for your eyes, albeit wording is a reflection of our best assessment of an ugly reality.

See Exhibit 3.

14.    Subsequently, Tom Burlin assured Mr. Salgado that there would be no negative backlash by stating in his reply e-mail "[n]o, not at all.  Tasos and Chris need to see your assessment as well as myself.  I expect a productive review with Dan."  See July 9, 2007 e-mail from Tom Burlin to Fernando Salgado (Exhibit 3).

15.    On Friday, July 13, 2007 Tasos Tsolakis sent an e-mail to Dan Acton, the TSCI Senior Executive working for the ACS Solution Center headed by Mr. Tsolakis in which he stated "[e]ffective Monday July 16th, you and your teem need to find another sponsor at ACS.  I will not need your services.  Thank you.  Tasos."  A copy of the July 13, 2007 e-mail from Tasos Tsolakis to Dan Acton is attached hereto as **Exhibit 4** and incorporated herein by reference.

16.    Also, shortly after receipt of the July 6, 2007 e-mail, ACS refused to pay certain portions of TSCI's invoices which are due as per the Agreement and which had been previously paid without question, from the inception of the Original Agreement.  These partial payments constitute a breach of contract by themselves.

17.    After July 16, 2007, TSCI continued to do work for the ACS Solution Center notwithstanding Mr. Tsolakis' prior e-mail of July 13, 2007 because on information and belief Tom Burlin and other ACS executives told Mr. Tsolakis to continue to work with TSCI.

18.    On Tuesday, August 14, 2007, Tasos Tsolakis telephoned Dan Acton, TSCI Managing Director of this engagement, and told him that: (1) GHS did not perform well financially this past July (2007); and (2) the contract between ACS and TSCI was terminated effective Friday, August 17, 2007.

19.    Dan Acton sent an e-mail to Tasos Tsolakis on Wednesday, August 15, 2007 confirming what he had just been told by Mr. Tsolakis regarding the contract termination and specifically advising Mr. Tsolakis that:

> According to our (TSCI) contract amendment with ACS in 2006, on page two, item #8, should ACS terminate for the convenience of ACS, there are two options – (a) TSCI resources can be reassigned to other company projects, or (b) ACS will pay early termination charges in an amount equal to 50% of the remaining balance of the contract.  Furthermore, ACS is obligated to pay TSCI for the invoices issued up to and including the month when the notice of termination is received by TSCI.

A copy of Dan Acton's August 15, 2007 e-mail is attached hereto marked **Exhibit 5** and incorporated herein by reference.

20.    Also, on August 15, 2007, Dan Acton sent an e-mail to Nancy Collins, the CFO of the parent company of ACS, Affiliated Computer Systems, Inc., Government Solutions Group (GSG), which is responsible for the TSCI Contract budget, as follows:

> Nancy: I got a call from Tasos yesterday about the latest numbers now working for GHS and the need to terminate our (TSCI) contract with ACS.  I'm sorry to hear the company news and know you must be incredibly busy.
>
> Since you have a broad perspective of many of the challenges across the lines of business, I thought you may want to know that

our contract provides the feature of assigning the five of us across various lines of business, for example GCS and Federal, where we can immediately help work troubled projects or support integration activities with Albion, where our expertise would help immeasurably. Also, support to ITSS and the commercial HRO projects could be an immediate place for us to support the larger ACS as a highly valuable alternative.

Although there is a provision (Clause 8(B), page 2) for paying early termination charges of $1.76M, there is also a provision for us to be assigned to other company projects. Last year's amendment to our contract provides for this reassignment, (Clause 8(a), page 2), and could be of particular value to ACS as an alternative to paying termination charges.

I know there has been keen interest in working the enterprise solution, but there may be farther reaching strategic implications for us to apply our expertise to other program areas.

Please don't hesitate to call if I can be of service.

21. The early termination by ACS of TSCI was subsequently confirmed by Tasos Tsolakis after ACS's receipt of the two TSCI emails (items 19 and 20 above) regarding ACS' obligation to pay Early Termination charges, in case ACS would decline the option to assign the TSCI resources to other projects. See August 16, 2007 e-mail from Tasos Tsolakis in which he stated:

As we discussed your team's last day of work is this Friday. I expect minimum transition given your team's limited involvement. I will schedule a meeting with you, myself and Debra Bangs this Friday to collect badges and finalize exit.

22. On August 17, 2000 counsel for TSCI sent a letter to ACS enclosing TSCI's invoice for $2,033,833.00 for the full amount due by ACS to TSCI as a result of the early termination under Paragraph 8(b) of the Amendment to the Original Agreement. A copy of the August 17, 2007 letter from TSCI's counsel to ACS is attached hereto marked **Exhibit 6** and incorporated herein by reference.

23.    ACS has not paid the August 17, 2007 invoice in the amount of $2,033,833.00 due under the terms of the Amendment to the Original Agreement, thereby materially breaching its contract with Plaintiff TSCI.

24.    TSCI has incurred a loss of $2,033,833.00 as a result of the breach by ACS of the original Agreement, as amended.

WHEREFORE, Plaintiff, Transformational Strategies Consulting, Inc. demands judgment against Defendant ACS State Healthcare LLC in the amount of Two Million Thirty Three Thousand Eight Hundred Thirty Three and No/100 Dollars ($2,033,833.00) plus interest and costs.

Respectfully submitted,


/s/ James A. Sullivan, Jr.
_____
JAMES A. SULLIVAN, JR. – (Bar #475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, Maryland  20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail: jsullivan@milesstockbridge.com

Attorneys for the Plaintiff, Transformational
Strategies Consulting, Inc.

AGREEMENT BY AND BETWEEN

**ACS STATE HEALTHCARE, LLC**
**and**
**Transformational Strategies Consulting, Inc.**

TO PROVIDE

**Executive Consulting and Advice Regarding the**
**Architecture and Development of the ACS Enterprise**
**Claims Processing Application**

**EXHIBIT**

1

THIS AGREEMENT (hereinafter "Agreement") is made by and between ACS State Healthcare, LLC with offices located at 1800 M Street, NW, Washington, DC 20005 (hereinafter "ACS"), and Transformational Strategies Consulting, Inc. located at 9645 Eagle Ridge Dr, Bethesda, MD 20817 (hereinafter "TSCI"), referred to individually as party and collectively as Parties.

WHEREAS ACS desires to contract with TSCI to secure Executive Consulting and Advice Services regarding the architecture and development of ACS Enterprise Solution for MMIS claims processing; and,

WHEREAS, TSCI desires to perform the provision of these services in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, ACS and TSCI agree as follows:

### 1. ENTIRE AGREEMENT

This Agreement shall constitute the complete and exclusive Statement of understanding between the parties which supersedes all previous agreements, written or oral, and all communications between the parties relating to the subject matter of this Agreement.

### 2. WORK

Pursuant to the provisions of this Agreement, TSCI shall provide Executive Consulting and Advice as described in Exhibit 1 (Scope of Work).

### 3. PERSONNEL

All TSCI personnel performing work under this Agreement shall be subject to the prior approval of ACS. If at any time during the term of this Agreement, any TSCI personnel is found to be negligent in the performance of the work, then TSCI shall, upon receipt of written notice from ACS, replace such personnel with substitute qualified personnel within 30 days.

TSCI shall be solely liable and responsible for providing to, or on behalf of, all persons performing work pursuant to this Agreement, all employee compensation and benefits. ACS shall have no liability or responsibility for the payment of any salaries, wages, unemployment benefits, health, welfare and disability benefits, Federal and local taxes, or other compensation, benefits, or taxes, for any personnel provided by or on behalf of TSCI.

TSCI understands and agrees that all persons performing work under this Agreement are, for any and all purposes, the sole employees or agents of TSCI and not employees of ACS. TSCI shall maintain reasonable business insurance coverage's for itself and any persons under its control in the performance of this contract and shall be solely liable and

responsible for any and all workers' compensation benefits to any person as a result of injuries arising from or connected with any work performed by or on behalf of TSCI pursuant to this Agreement.

Both Parties agree that they will not, without the consent of the other Party, entice, encourage, offer special inducements, or otherwise recruit the employees of opposite Party during the period of the Agreement and for a period of two years thereafter. This clause is not intended to restrict any individual's right of employment but rather is intended to preserve the relationship intended under this Agreement and to prevent the Parties from actively recruiting the employees of the other Party

## 4.  COMPENSATION

The total compensation to TSCI for Services performed under this Agreement shall not exceed a fixed amount of US $ 1.5 million, except for pre-approved travel which shall re reimbursed on an actual cost basis, which shall be paid by ACS upon receipt of TSCI Invoices acceptable to ACS as per the following schedule:

> ➢  An amount equal to $ 150,000 upon this Agreement signature.
> ➢  Eighteen monthly payments, in arrears, equal to $ 75,000 against monthly invoices, the first on November 10, 2005 and the last on April 10, 2006.

For any month, in the event of a termination, the payment shall be pro rated. In addition, when requested and authorized in advance by the ACS Agreement Monitor, ACS shall reimburse TCSI for reasonable travel expenses in line with the ACS travel policies. Reimbursable costs must have receipts and explanations.

TCSI shall submit an invoice for each payment due in a form acceptable to the ACS. ACS shall pay each invoice, subject to approval by ACS of the Services rendered, within forty-five (45) days after receipt of a complete and accurate invoice. Submit all invoices as follows:

ACS State Healthcare, LLC

Attn: Paul Lehman

Cost Center _____

PO Box 981256

El Paso, TX 79998-1256

With a copy to M. Lehman at the address identified in Section 24 herein

## 5.  TRAVEL AND OTHER EXPENSES

The "Home Base" for the purpose of this Agreement is Washington DC. ACS will pay for all reasonable travel, living and other expenses from the Home Base to any US location previously approved by ACS as per ACS Travel Policies applicable to its employees. The Travel and Other Expenses are not included in the Compensation amount mentioned above and they will be paid against monthly Expense Invoices properly

detailed and supported by receipts according to the aforementioned Policy. Travel outside Home Base can not be for periods of time longer than 4 days except for exceptional cases approved by mutual agreement. TSCI commits itself to use extensively means of teleconferencing and collaboration from Home Base to keep expenses to the minimum necessary. TSCI will provide his own office space and facilities at the Home Base.

## 6. FACILITIES

ACS or ACS Affiliates shall provide one executive office, communications and building passes to TSCI when traveling outside the Home Base for periods longer than one day. ACS will also provide any clerical support that might be needed while working in ACS or ACS Affiliate's locations.

## 7. TERM

The term of this Agreement shall commence on October 24, 2005 and shall expire on April 24, 2006, unless earlier terminated in accordance with the Termination provisions of the Agreement..

ACS will have the right, at his sole discretion, to extent the Agreement for an additional period of up to 6 months under the same conditions and compensation rates, upon written notification to TSCI 90 days prior to the scheduled expiration date.

## 8. TERMINATION

ACS can terminate this Agreement in case of TSCI Default due to grave cause or negligence imputable to TSCI, if TSCI fails to remedy to the satisfaction of ACS said default within 15 days of ACS written notification to this effect. Should this be the case, TSCI shall be paid the Invoices issue up to and including the month, pro-rated if for a partial month, of final determination to Terminate.

If, at the ACS'S sole discretion, the Agreement is terminated for the convenience of ACS, then TSCI shall be paid for the Invoices issue up to and including the month when the Notice of Termination for Convenience was received by TSCI. In addition, ACS will pay TSCI for additional costs of early termination agree hereto by the parties to be equal to fifty percent (50%), if Termination within the first 12 months period, or twenty five percent (25%) if Termination within the last six month period of the Contract, of the remaining balance of the total Contract amount of $ 1.5 million minus the actual payments received by TSCI   If TSCI Default is later determined to be based on an event which did not constitute Default, then Termination shall be treated as if for ACS Convenience.

Under any termination, ACS shall provide disposition instructions to TSCI for any materials belonging to the ACS, which is in the custody of the TSCI. TSCI agrees to promptly comply with such disposition instructions.

## 9. AMENDMENTS

No changes to this Agreement or the Exhibits thereto shall be valid and effective unless made in the form of a written amendment which is approved in writing by the authorized officials of ACS and TSCI.

## 10. PROHIBITION AGAINST ASSIGNMENT AND DELEGATION

This Agreement or any interest therein, including, but not limited to, any claim for monies due or to become due with respect thereto, shall not be assigned or delegated, or both, by TSCI, without the prior approval by ACS in writing. Nothing herein shall preclude ACS from assigning the Agreement to one of its Affiliates.

## 11. INDEMNIFICATION

TSCI shall indemnify, defend, and save harmless ACS, their respective agents, officers, and employees from and against any and all claims, suits, actions, including workers' compensation suits, and costs of any kind, including all defense costs, all attorney's fees, arising from its negligent performance or omissions under this Agreement. Further, TSCI shall indemnify, defend, and save harmless ACS, their respective agents, officers, and employees from and against any and all claims, suits, actions, including workers' compensation suits, and costs of any kind, including all defense costs, all attorney's fees, arising as a result of death, personal injury, or damage to real or personal property (including ACS'S property), caused, in whole or in part, by the acts or omissions of TSCI in connection with this Agreement.

## 12. PROPRIETARY RIGHTS

All materials, data and other information of any kind obtained from ACS and all materials, data, reports, programs, and other information of any kind developed by TSCI which incorporate ACS proprietary information or are included in reports, briefings or otherwise developed under this Agreement and paid for by ACS during the performance of this Agreement are confidential and are the property of ACS. TSCI shall take all necessary measures to protect the security and confidentiality of all such materials, data, reports, programs and information. However, the provisions of this paragraph are not applicable to TSCI developed, collected or generated data, reports, programs, and other information of any kind which does not reveal or incorporate ACS specific information and it is based on publicly available information from other sources and of no proprietary applicability. The provisions of this Paragraph shall survive the expiration or other termination of this Agreement.

## 13. DATA SECURITY

TSCI shall protect the security of and keep confidential all materials, data, reports, programs and information received or produced under this Agreement. At the end of this

Agreement, TCSI shall provide ACS an inventory of all reports and other data generated under this Agreement and seek disposition instructions from the Agreement Monitor.

## 14. DISCLOSURE OF INFORMATION

TSCI agrees it shall not disclose any details in connection with this Agreement to any party, except as may be otherwise provided herein or required by law. However, in recognizing TSCI'S need to identify its services and related clients for marketing purposes, ACS shall authorize TSCI publicizing its role under this Agreement upon the following conditions:

- TSCI shall develop all publicity material in a professional manner.

- During the course of performance on this Agreement, TSCI, its employees, agents, and subcontractors shall not publish or disseminate commercial advertisements, press releases, opinions or feature articles using the name or logo of ACS without the prior written consent of ACS. Following the expiration or termination of this Agreement, TSCI may only reference this Agreement in a manner approved by ACS during the Agreement's period of performance.

## 15. PATENT, COPYRIGHT AND TRADE SECRET INDEMNIFICATION

TSCI shall indemnify, hold harmless and defend ACS from and against any and all liability, damages, costs, and expenses, including, but not limited to, defense costs and attorney's fees, for or by reason of any actual or alleged infringement of any United State's patent, copyright, or any actual or alleged trade secret disclosure, arising from or related to the utilization of TSCI'S information provided under this Agreement if and only if ACS has used such information or such information has been provided to ACS in the manner and within the implied limitations when offered or provided by TSCI.

## 16. WARRANTIES

TSCI shall perform this Agreement in a timely manner with the resources previously approved by ACS and exercising world class standards relevant to the specific scope at any given time.

## 17. COMPLIANCE WITH APPLICABLE LAW

TSCI shall comply with all applicable Federal, State and local laws, rules, regulations, ordinances, and directives, and all provisions required thereby to be included in this Agreement are hereby incorporated herein by reference.

TSCI shall indemnify and hold harmless ACS from and against any and all liability, damages, costs, and expenses, including, but not limited to, defense costs and attorney's fees, arising from or related to any violation, proven in the respective Court of Law as

being of the sole and direct responsibility of TSCI, its employees, agents, or subcontractors, of any such law, rules, regulations, ordinances or directives.

## 18. FAIR LABOR STANDARDS

TSCI shall comply with all applicable provisions of the Federal Fair Labor Standards Act, and shall indemnify, defend, and hold harmless ACS, their officers, employees and agents from any and all liability, including, but not limited to, wages, overtime pay, liquidated damages, penalties, court costs, and attorney's fees arising under any wage and hour law, including but not limited to, the Federal Fair Labor Standards Act, for work performed by TSCI'S employees for which ACS may be found jointly or solely liable.

## 19. CAPTIONS AND PARAGRAPH HEADINGS

Captions and paragraph headings used in this Agreement are for convenience only and are not part of this Agreement and shall not be used in construing this Agreement.

## 20. WAIVER

No waiver of any breach of any provision of this Agreement shall constitute a waiver of any other breach of such provision. Failure of any party to enforce at any time, or from time to time, any provision of this Agreement shall not be construed as a waiver thereof. The specific rights and remedies set forth in this Agreement shall not be exclusive and are in addition to any other rights and remedies provided by law.

## 21. GOVERNING LAW

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

## 22. SEVERABILITY

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

## 23. AUTHORIZATION

TSCI represents and warrants that the person executing this Agreement for TSCI is an authorized agent who has actual authority to bind TSCI to each and every term, condition, and obligation of this Agreement and that all requirements of TSCI have been fulfilled to provide such actual authority.

## 24. NOTICES

All notices or demands required or permitted to be given or made under this Agreement shall be in writing and shall be hand delivered with signed receipt or mailed by first-class registered or certified mail, postage prepaid, addressed to the parties at the following addresses. Addresses may be changed by either party giving ten days prior written notice thereof to the other party.

> If to ACS:

ACS State Healthcare, LLC.
1800 M Street, NW
Washington, DC 20005
Attention:   Mr. Paul Lehman
214-841-8038 Phone Number
214-887-0012 Fax Number

> If to TSCI:
Attention: Fernando Salgado
9645 Eagle Ridge Dr.
Bethesda. MD 20817
301-365-1246

## 25. PENALTIES AND LIQUIDATED DAMAGES

TSCI under this agreement shall provide expert advice based on the best judgment and experience; however TSCI does not make any explicit or implied warranty, assurance or guarantees or make any representations regarding development or implementation estimates or related to the performance, fitness of purpose of any software product provided by any vendor or custom code, integration, test or start up procedures developed or performed by ACS or third parties. TSCI does not assume any liability direct or indirect, neither any type of consequential or liquidated damages that might arise or result from TSCI performance of the Agreement or lack thereof

Notwithstanding the above and with no limitation to the above provision, in the event that any judgment against TSCI would be issue for any and all losses, penalties and liquidated damages, either direct or indirect, explicit or implied including liquidated and consequential  damages and any other losses, that ACS might incur as a result of TSCI performance or lack thereof, TSCI total liability and payment shall not exceed, under any circumstances either individually or in its totally, the total amount of the Agreement's scope portion which is the direct basis for said liability and payment.

## 26. CHANGES AND AMENDMENTS OF TERMS

ACS reserves the right to change any portion of the work required under this Agreement or to amend such other terms and conditions which may become necessary.  Any such revisions shall be accomplished in the following manner:

For any change which does not materially affect the scope of work, period of performance, payments, or any other term or condition included under this Agreement, a Unilateral Change Notice shall be prepared and signed by ACS.

For any revision which materially affects the scope of work, period of performance, payments, or any term and condition included in this Agreement, a negotiated modification to this Agreement shall be executed by the authorized officials of ACS and TSCI.

## 27. SUSPENDED OR DEBARRED ENTITIES

By signing this Agreement, TSCI certifies that it is not presently listed by any federal agency as debarred, suspended, or proposed for debarment from any federal contract activity. If, during the term of this Agreement, this information changes, TSCI shall notify ACS without delay.   Such notice shall contain all relevant particulars of any debarment, suspension, or proposed debarment.

IN WITNESS WHEREOF, ACS and TSCI have caused this Agreement to be signed by their duly authorized officers on the day and year first set forth hereinabove.

ACS State Healthcare, LLC

Transformational Strategies Consulting, Inc.

~~Paul Lehman, Senior Vice President~~
Tom Burlin, Group President

Fernando Salgado, President

10/13/05

10/13/05

Date

Date

# Exhibit 1 – Scope of Work

ACS State Healthcare Solutions is currently undertaking an initiative to rewrite their legacy MMIS application from a mainframe, Cobol, CICS, DB2 based application to a state-of-the-art Java based solution utilizing various Websphere components as well as other COTS applications (the "Solution"). During the course of this project, TSCI will serve the role as the Oversight and Audit team. They will engage in all phases of the project plan through final Solution delivery. Unless otherwise directed, TSCI shall consider all portions of the project plan in-scope.

In the role of Oversight and Audit team, TSCI responsibilities are to monitor and audit all aspects of the project including, but not limited to,
* Project Management,
* Technical architecture and design,
* Solution development and integration,
* Solution testing
* Solution deployment,

In order to provide advice, recommendations and counsel to ACS management for the purpose of Management ensuring that the Solution meets the project objectives. This includes ensuring that
* The project remains on schedule,
* The technical designs adhere to industry and product best practices
* The technical designs enable the required business functionality
* The business functionality performs to user requirements in terms of ease of use, performance, stability, reliability, and availability.
* The solution is deployable on a repeatable basis

TSCI shall work directly with ACS employees, sub-contractors, and partners to facilitate the resolution of any issues uncovered. TSCI understands the sensitive nature of their role and will take appropriate measures to ensure a positive impact on the project.

During this engagement, TSCI shall report directly to Paul Lehman and ensure that he is aware of all issues that could affect the successful, timely delivery of the Solution. TSCI shall maintain a log of all issues identified and their resolution chronology. TSCI shall escalate to Paul, as appropriate, to ensure a timely resolution of all issues.

TSCI understands their responsibilities to be broad in nature and the evaluation of their performance and successful delivery of their objectives is based upon their ability to provide relevant and timely advice to ACS management to influence the delivery of the Solution in a positive manner and a successful delivery of the Solution.

Within the total Term period of performance of this Agreement this SOW shall not be confined by specific dates but rather a successful delivery of the Solution. ACS and TSCI shall meet minimally on a weekly basis to review their progress and areas of involvement on the project.

TSCI will participate in meetings and work sessions with ACS or other ACS contractors as needed,

TSCI will perform his own research and information gathering that might be necessary to perform analysis and formulate advice and recommendations to the ACS Authority.

ACS will secure for TSCI unrestricted access to ACS sources and vendors and contractors for the purpose of gathering the necessary information, make inquires and receive responses directly in the same conditions as it would be ACS Authority directly performing these tasks. Therefore, TSCI will sign required Non Disclosure Agreements in the same terms as those signed by ACS.

Exhibit 2
Amendment to Agreement By And Between
ACS State Healthcare, LLC and
Transformational Strategies Consulting, Inc.

For Additional Statement of Work To Provide
Executive Management Resources and Consulting and Advice Regarding
Planning, Start up and Formational Executive Management of ACS Solution
Center

As per Article 26, the parties mutually agree to modify the Agreement with the additional Statement of Work detailed below in this Amendment. This Amendment does not alter or change the current Agreement Terms and Conditions not modified by this Amendment nor those related to the existing scope of work for Executive Consulting and Advice Regarding the Architecture and Development of the ACS Enterprise Claims Processing Application.

The following amended Terms and Conditions are applicable to this amended additional statement of work

### 3. Amended Personnel

Resource identification and submittal for ACS approval will be made within two weeks of the signature of this Amendment. Should a replacement be necessary, TSCI will exercise maximum practical expedience to secure a satisfactory replacement.

TSCI will exercise maximum practical expedience in securing the resources after this Agreement Amendment is signed, but not later than 3 weeks after receipt of down payment.

ACS will have the right, but not the obligation, to offer employment contracts to any of the TSCI assigned resources after the contractual period of two years, with no additional compensation to TSCI.

### 7. TERM

The term of this additional statement of work will commence on September 15, 2006 and shall expire on October 15, 2008.

ACS and TSCI Agreement to Include Exhibit 2 into HC Agreement        Page 1 of 4    

EXHIBIT
2

## 8.  TERMINATION

ACS can terminate this Agreement in case of TSCI default due to grave cause or negligence imputable to TSCI, if TSCI fails to remedy to the satisfaction of ACS said *ACS termination* default within 30 days of ACS written notification to this effect. Should this be the case, TSCI shall be paid the Invoices issued up to and including the current month, pro-rated if for a partial month, of final determination to Terminate.

If, at the ACS'S sole discretion, the Agreement for this Amended Scope is terminated for the convenience of ACS; then ACS can, at its sole discretion, select one of the following two options:

  a)  ACS would be able to modify the scope of assignment of the TSCI resources, for the remainder of the original period of two years, to other projects that require similar skills and experience under the same Terms and Conditions, other than the new amended scope or

  b)  TSCI shall be paid for the Invoices issue up to and including the month when the Notice of Termination for Convenience was received by TSCI.  In addition, ACS will pay Early Termination Charges in an amount equal to fifty percent (50%) of the remaining balance of the total Amended Scope Cost minus the actual payments received by TSCI, if Termination within the first 18 months period. ACS will pay Early Termination Charges in an amount equal to twenty five percent (25%) of the remaining balance of the total Contract amount of Amended Scope Cost minus the actual payments received by TSCI, if Termination within the last six month period of the Contract.

## Amended Additional Scope

The TSCI additional total scope under this Amendment includes Executive management and leadership of the Solution Center resources and activities necessary for planning, start up implementation, operations and formal transition to ACS management.  Specific tasks will include:

  1.  Strategic direction and leadership regarding methods, tools and activities to execute the Solution Center scope.
  2.  Actual executive daily management of all SC resources.
  3.  Coaching of the ACS Management Team assigned to the Solution Center in order to enable a seamless transition after the SC formation period of 2 years.
  4.  Evaluation and decision making regarding vendors within the ACS Corporate standards.
  5.  Strategy, planning and execution of an offshore strategy for solution development and maintenance.  This might include centers operated by ACS or outsourced to vendors.
  6.  Vendor management.
  7.  Periodic and ad hoc reports to ACS Executive Management as might be required.

Assumptions:

1. Solution Center Executive will report to the ACS Government Group President, "ACS Executive".
2. SC Executive will have ultimate authority regarding human resources in the SC (within the ACS Corporate HR policies and guidelines).
3. SC Executive will submit recommendations regarding service vendors to the ACS Executive for final decision. These recommendations will include vendor selection, contracting T&Cs (subject to ACS Legal Counsel Approval), change of vendors and cancellation of contracts if necessary.
4. SC Executive will have the decision regarding software and hardware vendors (subject to ACS Government Group CIO's approval)
5. In order to have an optimum transition, ACS Management Team - in -Training (still reporting to TSCI Sr. Executives) no later than 18 months after start of the SC ( a minimum of 6 months to prepare seamless transition)..
6. TSCI will have 2 dedicated offices in the ACS DC building with priority access to a conference room for SC business. TSCI will also have three executive offices in Atlanta.
7. All TSCI resources will have a full time equivalent dedication.


## Amended Additional Compensation

This pricing is valid for a minimum quantity of 3 Sr. Executives.
This pricing is valid for a minimum two year commitment for each Senior Executive or Senior Specialist. ACS will designate at contract signing the initial number of Senior Executives and Senior Specialists.

The amended additional Compensation corresponding to the aforementioned amended additional scope as follows:

➢ TSCI Senior Executive: $ 530,000 per year per person.
➢ TSCI Senior Specialist: $ 300,000 per year per person.

The Amended Scope Cost is equal to [(# of Senior Executives * $530,000 + # of Senior Specialist * $300,000) * 2 years].

The Contractual year has 240 work days. The monthly billing will be based on actually worked full time equivalent work days during the month. The billing work day rate will be $ 2208 for each Sr. Executive and $ 1250 for each Sr. Specialist. ACS shall not request any reduction in the number of work days from a minimum of 20 days per month. TSCI will provide, in each monthly billing, the accumulated number of work days in the year, such as not to exceed the total work days allocated for each category per Contract year.

TSCI will submit an invoice for an advance payment equal to 10% of the Amended Scope Cost within one day of this Amendment signature. Should the number of TSCI personnel actually engaged differ from the initial number designated at contract signing, then the advanced payment will be recomputed and the difference will be reimbursed to ACS.

The daily compensation in the monthly billing will be reduced by 10% which is a net of $1988 per day for each Sr. Executive and $1125 per day for each Sr. Specialist.

Activities related to this statement of work (Exhibit 2) performed by Fernando Salgado will be included in the existing compensation of Exhibit 1.

## Amended Travel and Other Expenses

The home base for travel expenses purposes will be approved by ACS with the confirmation of each specific resource.

IN WITNESS WHEREOF, ACS and TSCI have caused this Agreement Amendment to be signed by their duly authorized officers.

ACS State Healthcare, LLC              Transformational Strategies Consulting, Inc.

Tom Burlin, Group President            Fernando Salgado, President

9/18/06                                3/18/06

Date                                   Date

**Fernando Salgado**

| | |
|---|---|
| **From:** | Burlin, Tom [Tom.Burlin@acs-inc.com] |
| **Sent:** | Monday, July 09, 2007 2:40 PM |
| **To:** | 'Fernando Salgado' |
| **Subject:** | RE: Urgent - MMIS CritSit Worsening |

No, not at all. Tasos and Chris need to see your assessment as well as myself. I expect a productive review with Dan.

-----Original Message-----
From: Fernando Salgado [mailto:f.salgado@tsci.biz]
Sent: Monday, July 09, 2007 12:40 PM
To: Tom Burlin
Subject: Re: Urgent - MMIS CritSit Worsening

Tom: You are certainly most welcome - I am in daily contact with all 5 TSCI people.

I hope there are no negative backlash from my frank language intended for your eyes, albeit wording is a reflection of our best assessment of an ugly reality.

Regards at home.

Your friend.
-----Original Message-----
From: "Burlin, Tom" <Tom.Burlin@acs-inc.com>
Date: Mon, 9 Jul 2007 12:11:45
To:"'Fernando Salgado'" <F.Salgado@tsci.biz> Cc:"Deelsnyder, Christopher"
<Christopher.Deelsnyder@acs-inc.com>,
"Tsolakis, Tasos" <Tasos.Tsolakis@acs-inc.com>
Subject: RE: Urgent - MMIS CritSit Worsening

Fernando, thank you for the update. I have recently reviewed the status of the project with Tasos and Chris. While much of the information in your memo reflects the status I received there are some significant points of departure. I would ask that Dan meet with Chris and Tasos to discuss these differences and the status as reported to me. I will ask Tasos and Chris to advise me after they meet as to any further actions. Again thank you for candid assessment. This is an extremely important program to ACS and myself personally.


-----Original Message-----
 From: Fernando Salgado [mailto:F.Salgado@tsci.biz]
 Sent: Friday, July 06, 2007 8:44 PM
 To: tom.burlin@acs-inc.com
 Subject: Urgent - MMIS CritSit Worsening



Tom: I deeply regret the need to send you this email.  While no one wants to be the messenger of bad news, TSCI works for you and owes YOU an unbiased and confidential "Blue assessment" of the situation.

1

**EXHIBIT**

3

Dan Acton is scheduling a meeting with you as soon as your schedule permits.
He will provide many more details and recommendations and some root causes.


Our observations are the result of TSCI five top, world class, experts in the Program:
complex Systems and Program Management (Acton); IBM technology development, integration and
testing (Kumar Bhaskaran); complex security and environments (M. Baenziger); Requirements
Extractions / Documentation (C.
McClenaghan) and Contractor Management (Fleming).


In essence, WIPRO has been unable to deliver anything of use; furthermore, longer delays have
become increasingly evident to the point where June 30,
2008 NH dates are extraordinarily difficult to achieve.  WIPRO early performance test
(EPT) code was finally delivered (still unworkable), after huge delays and reflects the total
inability of WIPRO to perform ANY task on schedule and with predictable quality.  The (new)
Iteration 1 desperately needed to start the NH customization (ES2) is now 7 weeks behind
schedule (after WIPRO promises in February), and in reality it will protract in keeping with
WIPRO tradition and the gap between on-shore and off-shore management.  All other Iterations
are also late, by 2-3 months with final regression test occurring in June 2008, when NH UAT
is promised, and no chance of any reasonable NH customization period.    In contrast with
these long known WIPRO deficiencies, WIPRO continues to receive ACS unprecedented leniency
and commercial advantages, with nothing in return to ACS's favor.


ACS recently lost two key and superlative SME Leaders, for Claims Adjudication and
Members/Case Management, to EDS.  This is extremely troubling due to the huge hole in
expertise left on the functional development team, and despite a period of "white gloves" and
HR centric approach. Now, the rumor mill is rampant with reorganization and personnel cuts.
There has been no focus on the CritSit.


We also understand NH Client confirmed his long standing unwillingness to accept a phased
release and increased dissatisfaction with ACS DSD requirements extraction and documentation
process.


The latest excuse is to blame most issues on the complex (IBM) technology instead of an inept
WIPRO and legacy OMINICAID management, the truth is that multiple products suite (even
including several product vendors) are the routine in large complex programs, which can still
be successfully delivered by suitable management.


Our recommended approach to develop NH ES2 deliverables presented to you in February and
further discussed with Chris Deelsnyder is even more critical now.  There were essential
immediate tasks for execution in the April/May period, which are still pending a final
decision on the ES2 approach.  This decision has been withheld on the 'hope' that WIPRO (with
18 months history of false promises despite past permissive ACS management) would demonstrate
tremendous and radical improvement after these recent large commercial concessions, such that

2

WIPRO could also perform the ES2 scope.    This is a highly unrealistic expectation and the resulting indecision is causing the worsening of an already difficult CritSit.

Tom, I just could not wait any longer after almost 3 months waiting for a decisive CritSit management style with results.  Instead, we have been concerned by some crafted unrealistic optimistic messages that might be reaching you.

Can NH still be recovered? Perhaps, let's talk either directly or with Dan.

Fernando Salgado

TSCI President and CEO

Cel. 301-801-9048

**From:** Tsolakis, Tasos [mailto:Tasos.Tsolakis@acs-inc.com]
**Sent:** Friday, July 13, 2007 4:05 PM
**To:** Acton, Dan
**Subject:** TSCI Work

Dan,

Effective Monday July, 16th, you and your team need to find another sponsor at ACS.

I will not need your services.

Thank you

Tasos

**EXHIBIT**

**4**

**Fernando Salgado**

| | |
|---|---|
| **From:** | Acton, Dan [Dan Acton@acs-inc.com] |
| **Sent:** | Wednesday, August 15, 2007 12:02 AM |
| **To:** | Tsolakis, Tasos |
| **Cc:** | Deelsnyder, Christopher |
| **Subject:** | Follow-up to your call this afternoon |

Tasos,

I was surprised with your telephone call to me this afternoon since we (TSCI) are fully engaged in extremely critical tasks on the ACS MMIS Enterprise Project for which you have requested our focus, with the concurrence of Chris Deelsynder and Tom Burlin.

To follow-up from your call to me at my ACS DC office this afternoon, I wanted to take this opportunity to ensure I understood your directions.

You explained to me that GHS did not perform well financially this past July (2007). As such, you need to terminate our contract. Furthermore, you said that after a conversation you had with Chris Deelsynder and Tom Burlin, that our (TSCI) termination with ACS would be effective this Friday, August 17, 2007.

I asked if anyone else at ACS or on the enterprise team was aware of this action and if we should involve anyone else in our departure. You said that only Chris and Tom were aware of this decision and that there was no need to get others involved at this point. I also asked if there was any other basis for this decision and you said no.

According to our (TSCI) contract amendment with ACS in 2006, on page two, item #8, should ACS terminate for the convenience of ACS, there are two options - (a) TSCI resources can be reassigned to other company projects, or (b) ACS will pay early termination charges in an amount equal to 50% of the remaining balance of the contract. Furthermore, ACS is obligated to pay TSCI for the invoices issued up to and including the month when the notice of termination is received by TSCI.

Fernando was traveling today, but I have a status meeting with him tomorrow.

I presume you would like any on-going work turned over to our respective counterparts by Friday. Please let me know if I can provide any additional assistance.

Regards,
Dan


Daniel A. Acton
Managing Director
TSCI InfoTech Management LLC
(972) 567-2428 cell


8/15/2007

**EXHIBIT**

*5*

# MILES & STOCKBRIDGE P.C.

**J. Stephen McAuliffe, III**
(301) 517-4829
smcauliffe@milesstockbridge.com

August 17, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**AND VIA FIRST CLASS MAIL**

ACS State Health Care, LLC
1800 M Street, NW,
Washington, DC 20005

Attn: Mr. Paul Lehman

Re:    Agreement by and between ACS State Health Care, LLC and
       Transformational Strategies Consulting, Inc. Dated October 13, 2005
       As Amended September 18, 2006

Dear Mr. Lehman:

This firm is counsel for Transformational Strategies Consulting, Inc. I have reviewed the original agreement by and between ACS State Health Care, LLC ("ACS") and Transformational Strategies Consulting, Inc. ("TSCI") dated October 13, 2005 (the "Contract") and the Amendment to the Contract, copies of which are attached hereto marked Exhibit 1, collectively. I have also reviewed the e-mails sent by Tasos Tsolakis on behalf of ACS to Daniel Acton, TSCI's Managing Director on Thursday, August 16, 2007 confirming ACS's termination for convenience of the Contract as Amended. Copies of the August 16, 2007 e-mails are attached hereto marked Exhibit 2, collectively.

As you know, Paragraph 8(b) of the Contract as amended provides as follows:

> b)    TSCI shall be paid for the Invoices issue up to and including the month when the Notice of Termination for Convenience was received by TSCI. In addition, ACS will pay Early Termination Charges in an amount equal to fifty percent

**EXHIBIT**

**6**

MILES & STOCKBRIDGE P.C.

ACS State Health Care, LLC
August 17, 2007
Page 2

(50%) of the remaining balance of the total Amended Scope Cost minus the actual payments received by TSCI, if Termination within the first 18 months period. ACS will pay Early Termination Charges in an amount equal to twenty five percent (25%) of the remaining balance of the total Contract amount of Amended Scope Cost minus the actual payments received by TSCI, if Termination within the last six month period of the contract.

Accordingly, TSCI is owed $1,762,617.00 as a result of ACS's early termination of the Contract under Paragraph 8(b) of the Contract as amended. This amount does not include an invoice for the full month of August (per the Contract) and other outstanding invoices, as identified in the attached invoice. As a result of ACS's early termination under Paragraph 8(b), TSCI is owed the total sum of $2,033,833.00. A copy of TSCI's invoice for this amount is attached hereto marked Exhibit 3. Please provide payment of the full sum due and owing to TSCI pursuant to the invoice attached within ten (10) days.

Mr. Tsolakis stated in his e-mail of August 16, 2007 to Dan Acton that "I will schedule a meeting with you, myself and Debra Bangs this Friday to collect badges and finalize exit." If you require any further information from TSCI or need to contact TSCI for any reason, please let me know.

Sincerely,

J. Stephen McAuliffe, III

JSM:kj
enclosures

cc:    Tom Burlin, Chief Operating Officer
       Tasos Tsolakis
              *via e-mail and via certified mail,*
              *return receipt requested*

**I (a) PLAINTIFFS**

Transformational Strategies Consulting, Inc.

**DEFENDANTS**

ACS State Healthcare, LLC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James A. Sullivan, Jr.    (301) 762-1600
Miles & Stockbridge P.C.
11 N. Washington St., Suite 700
Rockville, Maryland  20850

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ◉ **G. Habeas Corpus/**<br>**2255** | ◉ **H. Employment**<br>**Discrimination** | ◉ **I. FOIA/PRIVACY**<br>**ACT** | ◉ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ◉ **K. Labor/ERISA**<br>**(non-employment)** | ◉ **L. Other Civil Rights**<br>**(non-employment)** | ◉ **M. Contract** | ◉ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ◯ 2 Removed from State Court  ◯ 3 Remanded from Appellate Court  ◯ 4 Reinstated or Reopened  ◯ 5 Transferred from another district (specify)  ◯ 6 Multi district Litigation  ◯ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. Section 1332(a)–Diversity of Citizenship: Breach of Contract

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ 2,033,833.00  Check YES only if demanded in compl. JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 9-11-07  SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.