IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRANSFORMATION STRATEGIES CONSULTING, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number 1:07-cv-01606-ESH Judge: Ellen S. Huvelle |
| ACS STATE HEALTHCARE, LLC | ) ) | |
| Defendant. | ) | |

**MOTION OF DEFENDANT ACS STATE HEALTHCARE, LLC FOR PARTIAL DISMISSAL OF COMPLAINT**

Defendant ACS State Healthcare, LLC respectfully moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the claim in plaintiff Transformational Strategies Consulting, Inc.'s complaint relating to any entitlement to an Early Termination Charge under the parties' contract, with prejudice for failure to state a claim upon which relief can be granted. The grounds for this motion are set forth more fully in the accompanying memorandum in support of the motion, which is incorporated herein by reference.

Dated:   October 19, 2007              Respectfully submitted,

                                                                               /s/ David E. Mills
David E. Mills (D.C. Bar No. 401979)
Lynn M. Deavers (D.C. Bar No. 486306)
Dow Lohnes PLLC
1200 New Hampshire Ave., NW
Suite 800
Washington, D.C.  20036
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
dmills@dowlohnes.com
ldeavers@dowlohnes.com

Counsel for Defendant
ACS State Healthcare, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRANSFORMATION STRATEGIES CONSULTING, INC. )<br><br>Plaintiff, )<br><br>v. )<br><br>ACS STATE HEALTHCARE, LLC )<br><br>Defendant. ) | Case Number 1:07-cv-01606-ESH<br>Judge: Ellen S. Huvelle |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ACS STATE HEALTHCARE, LLC'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

Defendant ACS State Healthcare, LLC ("ACS") respectfully submits this memorandum in support of its motion for partial dismissal of the complaint filed by plaintiff Transformational Strategies Consulting, Inc. ("TSCI").

### INTRODUCTION

This is a single-count breach of contract case in which TSCI alleges that it is entitled to payment on certain invoices and an "Early Termination Charge" ("ETC"). The amount owed on invoices is a matter of factual dispute and will be addressed separately. The ETC, however, is not owed at all. TSCI is not entitled to any amount as an ETC under the plain language of the contract, and that claim should be dismissed.

### FACTUAL BACKGROUND

Many allegations in the Complaint are inaccurate or incomplete, which will be the subject of a later filing. For purposes of this motion, however, we must accept the factual allegations as true. Accordingly, we set forth the facts TSCI alleges, without conceding

1

their truth, and demonstrate that, even accepting these facts, ACS is entitled to dismissal of the ETC claim as a matter of law.

In October 2005, ACS and TSCI entered into an agreement (the "Original Agreement") for TSCI to provide consulting services regarding development of ACS's Medicare Management Information Software ("MMIS") application. (Complaint at ¶ 4.) The Original Agreement expired by its own terms on April 24, 2007. (Id. at Exhibit 1.)

In September 2006, ACS and TSCI executed an Amendment to the Original Agreement (the "Amendment"). (Id. at ¶ 5, Exhibit 2). The Amendment contemplated that, among other things, TSCI would "Provide Executive Management Resources and Consulting and Advice Regarding Planning, Start up and Formation Executive Management" for ACS's "Solution Center" project. (Id.) The Amendment was set to expire on October 15, 2008.

The Amendment contains a "Termination" provision at Section 8:

> ACS can terminate this Agreement in case of TSCI default due to grave cause or negligence imputable to TSCI, if TSCI fails to remedy to the satisfaction of ACS said default within 30 days of ACS written notification to this effect. Should this be the case, TSCI shall be paid the Invoices issued up to and including the current month, pro-rated if for a partial month, of final determination to Terminate.
>
> If, at the ACS's sole discretion, the Agreement for this Amended Scope is terminated for the convenience of ACS; then ACS can, at its sole discretion, select one of the following two options:
>
> a) ACS would be able to modify the scope of assignment of the TSCI resources, for the remainder of the original period of two years, to other projects that require similar skills and experience under the same Terms and Conditions, other than the new amended scope or
>
> b) TSCI shall be paid for the Invoices issue [sic] up to and including the month when the Notice of Termination for Convenience was received by TSCI. In addition, ACS will pay Early Termination Charges in an amount equal to fifty percent

> (50%) of the remaining balance of the total Amended Scope Cost minus the actual payments received by TSCI, if Termination within the first 18 months period. ACS will pay Early Termination Charges in an amount equal to twenty five percent (25%) of the remaining balance of the total Contract amount of Amended Scope Cost minus the Actual Payments received by TSCI, if Termination within the last six month period of the Contract.

(Id. at ¶ 6, Exhibit 2.)

On August 14, 2007, ACS employee Tasos Tsolakis informed TSCI Managing Director Dan Acton that ACS was terminating the Amendment effective Friday, August 17, 2007. (Id. at ¶ 18.)

On August 15, 2007, TSCI informed ACS that, if it elected to terminate for convenience and not reassign TSCI personnel, ACS would owe as an ETC "an amount equal to 50% of the remaining balance of the contract." (Id. at ¶ 19.)

On August 17, 2007, TSCI demanded an ETC of $1,762,617, or 50% of a "remaining contract balance" that TSCI calculated was $3,525,234. TSCI calculated the "remaining contract balance" by subtracting the payment amounts through August 2007 of $1,914,766, from an Amended Scope Cost of $5,440,000.[1] TSCI then multiplied the remaining balance of $3,525,234 by 50% to arrive at the claimed ETC of $1,762,617.[2]

---

[1] ACS disputes that $5,440,000 was the Amended Scope Cost for several reasons, including the fact that TSCI failed to provide a full complement of personnel for certain periods of time. In fact, TSCI should have refunded ACS some of its initial costs and failed to do so, in breach of the contract. TSCI also overcharged ACS over the course of the Amendment. These disputed facts are irrelevant to this motion, however, so they are not addressed above. ACS assumes the numbers as TSCI has asserted solely for the purpose of this motion.

[2] Although TSCI's exact calculation is not included in the Complaint, the numbers it used and its calculations are not in dispute and are, in fact, verified in TSCI's Motion for Summary Judgment and accompanying affidavit filed with the Court on October 12, 2007. See TSCI's Motion for Summary Judgment, at 9-10.

3

TSCI alleges that the termination was for the convenience of ACS and, accordingly, that ACS owes payment on: (1) invoices totaling $271,216 (disputed, but not at issue in this motion); and (2) an Early Termination Charge of $1,762,617 (for TSCI's grand total of $2,033,833). (Id. at ¶¶ 19-24, Exhibits 5-6.)

## STANDARD OF REVIEW

When considering a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable factual inferences in favor of the plaintiff. Am. Farm Bureau v. U.S. Envtl. Prot. Agency, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). The court need not, however, accept the plaintiff's legal conclusions as true. Further, if the court finds that no relief can be granted under any set of facts that can be proved consistent with the plaintiff's allegations, it must dismiss the case for failure to state a claim. Id.

Under New York law, which governs this dispute under the Original Contract at § 24, see Complaint at Exhibit 1, disputes regarding the plain language or potential ambiguity of contract language are questions of law for the Court. See Ozdemir v. Caithness Corp., 728 N.Y.S.2d 824, 826 (N.Y. App. Div. 2001); Basel v. Traders Commercial Capital, LLC, 819 N.Y.S.2d 846 (N.Y. Sup. Ct. May 2, 2006).

## ARGUMENT

TSCI has miscalculated the ETC under the plain language of the Amendment. When the ETC is calculated pursuant to the plain language of the Amendment, it is clear that no ETC is owed. The Amendment states that if (as TSCI alleges) ACS terminates the Amendment for convenience within the first 18 months of the term, ACS owes an ETC equal to "fifty percent (50%) of the remaining balance of the total Amended Scope

4

Cost minus the actual payments received by TSCI." (Complaint at Exhibit 2 (Amendment § 8(b)). "Amended Scope Cost," in turn, is defined as the total amount to be paid under the Amendment. Id. at 3.

TSCI interprets this language in Section 8(b) to mean that it is entitled to—in addition to amounts already invoiced—an ETC of fifty percent (50%) of the remaining balance of the total Amended Scope Cost. As stated in the Complaint, on August 15, 2007, TSCI informed ACS that, if it elected to terminate for convenience, ACS would owe as an ETC "an amount equal to 50% of the remaining balance of the contract." (Complaint at ¶ 19.) TSCI derives the ETC based on an assumed total Amended Scope Cost of $5,440,000, less payments of $1,914,766, leaving the remaining balance of the contract as $3,525,234. Fifty percent of $3,525,234 is $1,762,617.

TSCI's interpretation, however, ignores critical, plain language in Section 8(b). The ETC provision clearly states that the ETC is equal to 50% of "the remaining balance of the total Amended Scope Cost <u>minus actual payments received</u>." (Emphasis added.) Under this unambiguous language, the ETC is calculated by taking 50% of the remaining balance and then subtracting ("minus") the actual payments received. Expressed mathematically:

ETC = .5 x (Balance of Amended Scope Cost) – Payments Received.

Under this calculation – using all the words in Section 8(b) of the Amendment, and using TSCI's own numbers – the "remaining balance of the Amended Scope Cost" is $3,525,234. Fifty percent of the "remaining balance of the total Amended Scope Cost" is $1,762,617. And the "actual payments received" is $1,914,766. Expressed mathematically:

5

$$\text{ETC} = .5 \times (\$3,525,234) - \$1,914,766, \text{ or}$$

$$\text{ETC} = \$1,762,617 - \$1,914,766, \text{ or}$$

$$\text{ETC} = -152,149$$

Based on the plain language of Section 8(b), given the values that obtain at this particular point in the life of the contract (especially given the actual payments received), ACS does not owe TSCI any Early Termination Charge.

This analysis fully comports with New York law and principles of contract interpretation. Under New York law, where the words in a contract are plain and unambiguous, the court must give effect to the plain meaning of the contract language. See Cellular Tel. Co. v. 210 East 86th St. Corp., 839 N.Y.S.2d 476, 480 (N.Y. App. Div. 2007); Fukilman v. 31st Ave. Realty Corp., 835 N.Y.S.2d 343, 344-45 (N.Y. App. Div. 2007).

There is no ambiguity here. The words in Section 8(b) are quite clear. They require a simple mathematical calculation: the first operation is to take 50% of "the remaining total Amended Scope Cost," and the second operation is to subtract "actual payments received." It is a matter of standard, universal middle school math that, absent parentheses that would change the order of operations, the operations of multiplication and division are accomplished before addition and subtraction,[3] and that is precisely what the language of Section 8(b) provides.

---

[3] See, e.g., Denise Szecsei, Basic Math and Pre-Algebra 29, 69 (Career Press 2006) (explaining that mathematical operations should be performed in the following order: (1) operations in parentheses; (2) operations involving exponents; (3) multiplication and division, from left to right; and (4) addition and subtraction, from left to right); James T. Fey, et al., Concepts in Algebra: A Technical Approach 42 (Janson Pubs. 1995) (same).

In the unlikely event the plaintiff were to challenge this principle, it is well established across the country that courts will take judicial notice of mathematical principles just like these.  See, e.g., United States v. Texas, 2005 WL 1868844, at *26 (E.D. Tex. Aug. 4, 2005) (court took judicial notice of mathematics textbook and its definition of percentages); Smith v. Estate of Gethings, 2005 WL 1503542, at *4 (N.J. Super. Ct. Ch. Div. June 24, 2005) (court took judicial notice of the mathematics of a mortgage amortization schedule); Theofanis v. Sarrafi, 791 N.E.2d 38, 47 (Ill. App. Ct. 2003) (a court of appeal may take judicial notice of laws of mathematics and computational methods scientists generally accept as irrefutable); Arden Carmichael, Inc. v. County of Sacramento, 113 Cal. Rptr. 2d 248, 252 n.9 (Cal. Ct. App. 2001) (court took judicial notice of "simple mathematical calculation"); State v. Sturgill, 1991 WL 15990, at *1 (Ohio Ct. App. Feb. 4, 1991) (court took judicial notice of laws of math and physics); In re Oxford Hospital, Inc., 1988 WL 138740, at *3 n.4 (Bankr. E.D. Pa. Dec. 20, 1988) (mathematical calculations are "capable of accurate and ready determination" and thus proper subjects of judicial notice); Miller v. Federal Land Bank of Spokane, 587 F.2d 415, 422 (9th Cir. 1978) (courts could and should take judicial notice of matters of mathematics).

Moreover, New York law requires an interpretation that gives meaning to each term in a contract.  See Riggs v. Riggs, 613 N.Y.S.2d 454, 455 (N.Y. App. Div. 1994) ("It is well established that '. . . [u]nless the conflict [between two provisions] is irreconcilable . . . the principle prevails that contracts should be so construed as to give effect to every word and expression contained therein.'") (emphasis in original).  Here, TSCI's interpretation would eliminate the words "minus actual payments received."  In

7

fact, not only would these words be rendered superfluous, but also the plain meaning of Section 8(b) would be dramatically altered. Rather than a front-loaded protection for TSCI that ACS could quickly reduce by making timely "actual payments" to TSCI, the ETC provision would become an evergreen insurance plan for TSCI. While TSCI might have preferred such a provision, that is not the provision it drafted into the Amendment.

The plain language of the contract is unambiguous and controls the outcome of the ETC claim. TSCI cannot circumvent this language by editing it, offering an alternative interpretation that it prefers, or attempting to create issues of fact where the language is plain on its face. See Nissho Iwai Europe PLC v. Korea First Bank, 756 N.Y.S.2d 140, 140 (N.Y. App. Div. 2003) (contracting party may not create ambiguity where none exists on face of contract).

## **CONCLUSION**

Accordingly, ACS respectfully requests that this Court dismiss the claim in TSCI's complaint relating to the Early Termination Charge, with prejudice.

Dated: October 19, 2007                     Respectfully submitted,

                                            __/s/ David E. Mills_____
                                            David E. Mills (D.C. Bar No. 401979)
                                            Lynn M. Deavers (D.C. Bar No. 486306)
                                            Dow Lohnes PLLC
                                            1200 New Hampshire Ave., NW
                                            Suite 800
                                            Washington, D.C.  20036
                                            Telephone: (202) 776-2000
                                            Facsimile: (202) 776-2222
                                            dmills@dowlohnes.com
                                            ldeavers@dowlohnes.com

                                            Counsel for Defendant
                                            ACS State Healthcare, LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Motion of Defendant ACS State Healthcare, LLC for Partial Dismissal of Complaint and Memorandum of Law in support thereof was served this 19th day of October, 2007, pursuant to the Court's CM/ECF filing requirements on the following individuals:

      James A. Sullivan, Jr.
      J. Stephen McAuliffe, III
      Miles & Stockbridge, P.C.
      11 North Washington Street
      Suite 700
      Rockville, MD 20850-4229
      jsullivan@milesstockbridge.com
      smcauliffe@milesstockbridge.com


      _/s/ Lynn M. Deavers_____
      Lynn Deavers

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRANSFORMATION STRATEGIES CONSULTING, INC.  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>ACS STATE HEALTHCARE, LLC  )<br>)<br>Defendant.  ) | Case Number 1:07-cv-01606-ESH<br>Judge: Ellen S. Huvelle |

**[PROPOSED] ORDER**

Upon consideration of defendant ACS State Healthcare, LLC's Partial Motion to Dismiss, it is this _____ day of _____, 2007,

ORDERED that defendant ACS State Healthcare, LLC's motion be, and it hereby is, GRANTED, and the claim in plaintiff Transformational Strategies Consulting, Inc.'s complaint relating to its entitlement to an Early Termination Charge is hereby dismissed with prejudice.


SO ORDERED:                           _____
                                      Hon. Ellen S. Huvelle
                                      United States District Judge

Copies to:

| | |
|---|---|
| James A. Sullivan, Jr.<br>J. Stephen McAuliffe, III<br>Miles & Stockbridge, P.C.<br>11 North Washington Street<br>Suite 700<br>Rockville, MD 20850-4229<br>jsullivan@milesstockbridge.com<br>smcauliffe@mislesstockbridge.com | David E. Mills<br>Lynn M. Deavers<br>Dow Lohnes PLLC<br>1200 New Hampshire Avenue, NW<br>Suite 800<br>Washington, D.C. 20036<br>dmills@dowlohnes.com<br>ldeavers@dowlohnes.com |
| Counsel for Plaintiff<br>Transformational Strategies<br>Consulting, Inc. | Counsel for Defendant<br>ACS State Healthcare, LLC |