**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRANSFORMATIONAL STRATEGIES CONSULTING, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ACS STATE HEALTHCARE, LLC )<br>)<br>Defendant. ) | Case Number 1:07-cv-01606-ESH<br>Judge: Ellen S. Huvelle |

**DEFENDANT ACS STATE HEALTHCARE, LLC'S**
**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL DISMISSAL OF COMPLAINT**

Defendant ACS State Healthcare, LLC ("ACS") respectfully submits this reply in support of its Motion for Partial Dismissal under FRCP 12(b)(6).

**INTRODUCTION**

TSCI's entire argument hinges on its position that the plain reading of the termination provision would lead to the absurd result that there would always be a negative ETC during the last six months of the contract term. TSCI also posits that the parties "must have" intended that TSCI would receive "a positive measure of relief" in the event of an early termination under any circumstances, and at any point in the contract. Therefore, according to TSCI, the law allows the Court to modify the plain words in the contract to avoid an "absurd result" and to ensure a positive measure of relief to TSCI in this case.

TSCI is demonstrably wrong. Its fundamental premise – that the plain reading of the contract necessarily results in a negative ETC in the last six months of the contract – is simply false. The ETC might well be positive in the last six months, depending on the

facts. TSCI's theory that the ETC will <u>always</u> be negative in the last six months assumes that certain events will take place, namely that timely payments will be made throughout the contract period, which would then reduce the ETC fairly quickly. But that is not how the ETC would work if payments were <u>not</u> made. If ACS had failed to make payments, TSCI would be entitled to a "positive" ETC, even if termination occurred during the last six months.

The termination provision is entirely reasonable as written. TSCI simply had more protection (i.e., a higher ETC) if ACS failed to make full or timely payments. But if ACS made its payments, it could reduce the ETC over time, even to zero. That is a reasonable, rational provision that creates an incentive for ACS to make full and timely payments, which benefits TSCI. It makes perfect business sense for both parties, and there certainly is no basis to conclude that this plain reading so far diverges from rationality or common sense that the Court should or could rewrite it. The plain language must control as a matter of law.

TSCI makes other half-hearted and inconsistent arguments that find no support in the language of the contract, in principles of mathematics, or in the law. TSCI's creative argument on the meaning of "of" must be rejected. As shown below, the termination provision (including the word "of") makes sense all by itself, without any new words or parentheses that TSCI would like to add. With regard to its mathematical equation on page 8, embedding a second "equals" sign within a parenthetical in its formula makes no sense at all and demonstrates the fallacy of TSCI's interpretation. And TSCI is wrong that the law allows the Court to rewrite the contract based on TSCI's supposed "intent" of the parties, which is irrelevant when the contract language is unambiguous.

Indeed, TSCI does not argue that the contract is ambiguous. It essentially concedes ACS's plain reading of the contract but argues that the language should be rewritten to ensure that TSCI receives "positive relief" under the circumstances of this case. TSCI is wrong as a matter of law, and the motion for partial dismissal should be granted.

**ARGUMENT**

I.      The Plain Language of the Contract Controls The Outcome of the ETC Claim.

TSCI argues that the literal interpretation of the termination provision would lead to an absurd consequence, and therefore an alternative interpretation should be adopted based on what TSCI repeatedly calls the "undisputed" and "clear" intent of the parties to ensure a "positive measure of relief for TSCI" in the event of an early termination. (Pl. Opp. Mem. at 2, 5-6, 10.) TSCI wants the Court to modify the contract language to comport with what TSCI claims is the intent of the parties.

TSCI's theory should be rejected. The contract language is clear and unambiguous, and it must be enforced. TSCI launches three basic attacks on the language in the termination provision, but none hold ground.

First, TSCI argues that, under the literal interpretation, the ETC calculation will always result in a negative number during the last six months, which renders the termination provision meaningless. But TSCI never attempts to demonstrate this point, because it is wrong. Under the plain terms of the provision, the ETC diminishes over time so long as payments are made under the contract, because, for example, the "remaining balance of the total Amended Scope Cost" would diminish as costs are paid. Indeed, TSCI's theory assumes timely payments by ACS throughout the contract term.

3

But what if payments are <u>not</u> made and ACS terminates before the end of the contract, say during the last six months? Non-payment does not automatically terminate the contract or trigger the ETC, so the contract could continue through its term without payments being made. Using TSCI's own numbers (which ACS accepts only for this motion), the total Amended Scope Cost would be $5.44 million. If no costs were paid, the "remaining balance of the total Amended Scope Cost" would be that same amount, $5.44 million. Termination in the last six months results in an ETC of "twenty five percent (25%) of the remaining balance of the total Contract amount of Amended Scope Cost minus the actual payments received . . . ." (<u>See</u> Compl. ¶ 5, Ex. 2 at 2.) Therefore, the ETC would be $1,360,000, a substantial positive number.

TSCI might think this scenario unlikely, as it might assume that it would have insisted on payments during the term, but that possibility does not support TSCI's position. Indeed, even if some payments were made, the result could easily still be a positive ETC in the last six months, depending on the amounts.[1]

Thus, TSCI might have been entitled to a "positive" ETC even upon an early termination during the last six months, depending on the facts. Under the plain language of the contract, TSCI would simply be entitled to a much higher ETC if ACS failed to make full or timely payments, and ACS could reduce the ETC over time by making payments. This creates an incentive that encourages payments (beneficial to TSCI) and rewards early payments with a reduced or, possibly, eliminated ETC (beneficial to ACS). This reflects a reasonable business approach. Accordingly, there is no factual or legal

---

[1] Of course, in addition to any ETC that might be owed, TSCI would have a right to recover on unpaid invoices for work properly completed. The ETC would be an extra charge.

basis for TSCI's assertion that this plain reading is irrational, and there is no basis for the Court to rewrite the contract language.[2]

TSCI's second attack fares no better. TSCI argues that the meaning of "of" in the termination provision ("remaining balance of the total Amended Scope Cost minus the actual payments received by TSCI"), should be read not only as applying to "the total Amended Scope Cost," but also to the remainder of the sentence, even though there is no indication of that intention (with parentheses or otherwise) in the sentence itself. According to TSCI, the Court should replace "of" with "that is" or "specified as," and then, in effect, add parentheses around all words after "of."

TSCI's argument is incorrect. The word "of" works quite naturally in the phrase "remaining balance of the total Amended Scope Cost" without stretching out further in the sentence to capture the next calculation or playing semantic games. The "remaining balance of the total Amended Scope Cost" is a complete mathematical expression which, in and of itself, means that we must derive the "remaining balance . . . of the . . . Cost." That is, take the total Amended Scope Cost and derive the remaining balance not yet paid. That is one of the three separate operations the termination provision requires, following the basic mathematical order of operations: (a) the calculation of the "remaining balance of the total Amended Scope Cost," (b) taking 50% of that amount, and (c) subtracting the actual payments received by TSCI. (See Def. Mot. for Part. Dismissal of Compl. at 4-6; Compl. ¶ 5, Ex. 2 at 2.)

---

[2] See Downes v. O'Connell, 103 F. Supp. 2d 579, 581 (E.D.N.Y. 2000) (under New York law, court may not, under guise of interpreting contract, add or excise terms or distort meaning of those used to make new contract for parties); Heller v. Pope, 164 N.E. 881, 882 (N.Y. 1928) ("courts will not make a new contract for the parties under the guise of interpreting the writing").

5

TSCI seems to concede that we must follow mathematical principles, but it nonetheless attempts to change the order of the mathematical operations (based on its supposed "intent") by rewriting the termination provision with a new set of parentheses. TSCI states as follows:

> [T]he proper formula based upon the clear intent of the Agreement is as follows:
>
> ETC = .5 x ($3,525,234 = $5,440,000 - $1,914,766)

(Pl. Opp. Mem. at 8.) While it is easy to see what TSCI is trying to accomplish with its creative math, this formula neither follows the rules of mathematics nor represents the words in the contract. No doubt the contract could have been written differently, but it was not. There are no parentheses in the termination provision (compare Pl. Opp. Mem. at 8, with Compl. ¶ 5, Ex. 2 at 2), and the unambiguous language makes sense without them.[3] The Court cannot simply rewrite the words. See Downes, 103 F. Supp. 2d at 581.

Moreover, as explained in ACS's opposition to summary judgment, the parties did use parentheses in the very same contract to modify the order of mathematical operations in a separate formula, but they did not do so in this particular provision. (See Def. Opp. Mem. to Pl. Mot. for Summary Judgment ("Def. Opp. Mem.") at 16, 18-19.) This further demonstrates under New York law that the parties intended that these words (and the standard order of operations) would stand on their own. (Id.)

Third and finally, TSCI complains that ACS used the same number twice, for both the "amounts invoiced by TSCI" and the "actual payments received by TSCI." In fact, however, ACS simply used the very numbers TSCI provided, in the exact manner

---

[3] TSCI argues that ACS wants to insert parentheses, but that is inaccurate. There are no parentheses in the sentence, and ACS does not suggest that there should be or that any are necessary. The words should be read naturally, literally and in order.

TSCI used them, and the result still yielded a negative ETC.  (See Def. Mot. for Part. Dismissal at 4-6; Pl. Opp. Mem. at 7-8.)  Indeed, TSCI uses the "amounts invoiced by TSCI" in place of the "actual payments received by TSCI" in its own calculation.  (See Pl. Opp. Mem. at 7-8.)  While it may be true that the "amounts invoiced by TSCI" may also equal the "actual payments received by TSCI," that does not alter the contract's unambiguous language.  (See Def. Opp. Mem. at 12-13, 17-18.)  As shown above, providing a formula that requires the parties to subtract the "actual payments received by TSCI" at the end of the other calculations makes sense and creates incentives and benefits for both parties.  While TSCI is not currently feeling the benefit of this language (which TSCI drafted, see Def. Opp. Mem. at 4, Burlin Decl. ¶ 7), it certainly benefited from the provision's incentive structure up to this point.  It cannot now insert new language to ensure a windfall for itself under the contract.

II.     Extrinsic Evidence Cannot be Considered in Interpreting an Unambiguous Contract.

    Although TSCI does not expressly argue that the contract is ambiguous (presumably because that would undermine its argument on summary judgment), it nonetheless asserts an argument concerning the intent of the parties.  TSCI would have the Court skip the first step in interpreting a contract – reviewing its terms to determine if there is any ambiguity – and simply presume ambiguity exists so that it may consider TSCI's proffered "intent" of the parties.

    This backdoor argument must be rejected.  Extrinsic evidence of intent would only be relevant if the contract were ambiguous.  See W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990) (under well-established contract principles, court may not consider extrinsic evidence when a contract is unambiguous);

7

see also Downes, 103 F. Supp. 2d at 581 (same). The contract language is not ambiguous here, as shown above.

In fact, the New York Court of Appeals expressly rejected TSCI's approach in W.W.W. Associates, finding that "[i]n its reliance on extrinsic evidence . . . plaintiff ignores a vital first step in the analysis: before looking to evidence of what was in the parties' minds, a court must give due weight to what was in their contract." Id. After finding no ambiguity in the contract provision at issue, the court refused to consider extrinsic evidence to create an ambiguity in the contract, stating that "[i]t is well-settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'" Id. (internal citations omitted). Here, the termination provision is also unambiguous, and extrinsic evidence is irrelevant to its interpretation.

TSCI attempts to circumvent these rules by claiming that the intent of the parties is "clear" and "undisputed." Not only are these assertions flatly wrong,[4] they are entirely irrelevant. TSCI cites no cases that permit a Court to rewrite unambiguous contract language using "intent" merely because the alleged intent is "clear" or "undisputed."

The cases that TSCI does cite do not support its position. For example, TSCI relies upon Reape v. New York News, Inc. for its assertion that the words of a contract may be rejected to clarify its meaning. (Pl. Opp. Mem. at 9-10.) But that case involved ambiguous contract language. In fact, the court in Reape stated that "ambiguities in an

---

[4] TSCI asserts that the clear and undisputed intent behind the termination provision was to ensure TSCI a positive measure of relief no matter when the contract was terminated for convenience. That is entirely unsupported, and ACS certainly does dispute it. (See Def. Opp. Mem. at 5-6.)

agreement should be interpreted most strongly against the draftsman." 504 N.Y.S.2d 469, 470 (N.Y. App. Div. 1986).[5]

TSCI also cites Brown Bros. Elec. Constrs. v. Beam Constr. Corp. to argue that ACS should have disputed TSCI's calculations before suit was filed (even though ACS did, in fact, dispute TSCI's calculations). (Pl. Opp. Mem. at 9.) But Brown Bros. does not stand for that proposition. In Brown Bros., the court reviewed the course of conduct between companies when they were unguided by legal counsel to help determine whether a contract existed in the first place, which was not otherwise clear. See Brown Bros., 361 N.E.2d 999, 1001 (N.Y. 1977). TSCI cannot stretch that case to mean that the plain language of the contract here should not be followed, or that ACS somehow waived its rights to dispute the ETC calculation. Indeed, there is no reason to believe that legal counsel was not involved here, rendering Brown Bros. even more irrelevant.

---

[5] Indeed, if this Court were to find Reape relevant at all, any ambiguity would have to be interpreted against TSCI, as the "draftsman." (See Def. Opp. Mem. at 4, 19-20, Burlin Decl. ¶ 7.) And as noted above, a court may not rewrite a contract to better reflect the drafter's intent. See Downes, 103 F. Supp. 2d at 581.

## **CONCLUSION**

Accordingly, ACS respectfully requests that this Court dismiss the claim in TSCI's complaint relating to the Early Termination Charge, with prejudice.

Dated:   November 30, 2007                             Respectfully submitted,

    /s/ David E. Mills_____
David E. Mills (D.C. Bar No. 401979)
Lynn M. Deavers (D.C. Bar No. 486306)
Dow Lohnes PLLC
1200 New Hampshire Ave., NW
Suite 800
Washington, D.C. 20036
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
dmills@dowlohnes.com
ldeavers@dowlohnes.com

Counsel for Defendant
ACS State Healthcare, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of Defendant ACS State Healthcare, LLC's Reply Memorandum in Support of Motion for Partial Dismissal of Complaint was served this 30th day of November, 2007, pursuant to the Court's CM/ECF filing requirements on the following individuals:

> J. Stephen McAuliffe, III
> James A. Sullivan, Jr.
> Miles & Stockbridge, P.C.
> 11 North Washington Street
> Suite 700
> Rockville, MD 20850-4229
> smcauliffe@milesstockbridge.com
> jsullivan@milesstockbridge.com

                                                                                           /s/ Lynn M. Deavers_____
                                                                                           Lynn M. Deavers